ATCHAFALAYA BANK *vs.* DAWSON.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE BUCHANAN PRESIDING.

EASTERN DIST.

*May*, 1839.

ATCHAFALAYA BANK. *vs.* DAWSON.

| 13L 497 |
| 51 467 |
| 13L 497 |
| 107 28 |

To enforce the forfeiture of the charter of a corporation, proceedings must be instituted to that effect by the state, and unless the power of instituting such proceedings be expressly delegated by law, *the state alone possesses it*, and having this power, may forbear to exercise it, and waive the forfeiture.

A charter granted by a state does not become absolutely null by the inexecution of the condition attached to it. A cause of forfeiture cannot be taken advantage of, or enforced against a corporation incidentally, or in any other mode than by a direct proceeding, *instituted by the government*; because it may waive a broken condition of a contract or charter, as well as an individual.

The clause in the bank charters of this state, which declares that in case of a suspension of specie payments for more than ninety days, the " charter shall be *ipso facto* forfeited and void," gives to the *state the right to claim the forfeiture*, in an action instituted for that purpose; and although the bank may have forfeited its corporate life, it continued to live as long as the state did not claim the forfeiture.

*Martin, J.*—The legislature possessed the power to remit any forfeiture that resulted to the bank charters, by the suspension of specie payments; and the exercise of that power in the act for the relief of the banks, approved March 14, 1839, relieves them from all penalties incurred by the *non*-payment of specie.

This is an action against the endorser of a promissory note, discounted at the branch of the Atchafalaya Bank, established at Monroe, in the parish of Ouachita. The defendant resides in the state of Mississippi, and this suit was instituted by attachment in the District Court at New-Orleans, the 2d March, 1838.

The defendant appeared by counsel, and put in an exception denying the right and power of the plaintiff to sue and maintain this action, because said plaintiff can no longer use its corporate name or privilege ; the bank having suspended

EASTERN DIST.
May, 1839.

ATCHAFALAYA
BANK
vs.
DAWSON.
and refused the payment of its notes, bills, obligations and moneys received on deposit, in lawful money of the United States, for more than ninety days antecedent to the present action, by which suspension and refusal the charter became, *ipso facto*, forfeited, &c.

Upon this exception, the cause was tried in the court below.

It was admitted the bank had suspended specie payments for more than ninety days previous to the institution of the present suit.

The 21st section of the bank charter, passed and approved the 10th March, 1835, declares, " That the said company shall not at any time suspend or refuse payment in lawful money of the United States, of any of its notes, bills, obligations, or any money received in deposit, &c.; and if it shall at any time suspend or refuse payment as aforesaid, the holder of such note, bill or obligation, &c., shall be entitled to demand and receive interest thereon, from the time of such suspension or refusal, until the same shall be fully paid, *at the rate of twelve per cent. per annum.*"

Sec. 22. " That no dividend shall be made during any such suspension or refusal of payment ; and if any such suspension or refusal of payment shall continue for *more than ninety days*, this charter shall be, *ipso facto*, forfeited and void."

The legislature passed a law the 14th March, 1839, after the rendition of the judgment in the court below, remitting and relieving the banks from all forfeitures on account of the suspension of specie payments.

The district judge came to the conclusion that the case, provided for in the 22d section of the act of incorporation or charter, had happened, that the self-destroying provision therein contained, had become operative, and that the corporate existence of the plaintiff had legally ceased.

Judgment was rendered sustaining the exception, and the Bank appealed.

*Hoffman,* for the appellant. Whether the plaintiff has or

not conformed strictly to the provisions of the charter, cannot be inquired into incidentally and collaterally.

2. No such inquiry can be gone into, except at the suit of the state, or power granting the charter.

3. The evidence does not justify the conclusion to which the inferior court has come.   See *Angell* and *Ames* on Corporations, and the plain principles of the jurisprudence of every country.

*Josephs*, for the defendant.   Corporations may be dissolved by mis-user or non-user, and when the condition of the grant or franchise is broken, it forfeits the whole charter or franchise. 4 *Comyn's Digest*, 499.   *G. 2, Verbo Franchise.*

2. Corporations may be dissolved in various ways, and is regulated in the different states by special enactments, and sometimes by a general law, or by a provision contained in the charter itself, as in the case of the *Bank of Niagara* vs. *Johnson*, 8 *Wendell's Reports*, 654.   *Slee* vs. *Bloom et al.*, 19 *Johnson*, 464.   20 *Ibid.* 669.   8 *Cowen's New-York Reports*, 396.

3. The Louisiana Code, under the title of Corporations, contains all the law we have on the subject, and which subjects charters and acts of incorporation to the general rules for the interpretation of agreements between individuals. *Louisiana Code*, 419, 424, 431, 438.

4. In the present case, the plaintiff has been created an artificial being, clothed with certain rights and powers ; among others, that of bringing suit, and its whole existence depends upon the performance of certain conditions and stipulations.   But in case it shall fail to comply, that is, suspend payment of its notes in specie for more than ninety days, this charter shall be, *ipso facto*, null and void.   This failure to perform a condition specified, operates, *ipso facto*, a dissolution of the charter.   *Louisiana Code*, 13–19, 1941, 1946.

5. Even at common law the legislature does not possess the power of remitting a cause of forfeiture of this kind. The doctrine of waiver is not applicable when by the terms

*Margin note:* EASTERN DIST.
*May*, 1839.

ATCHAFALAYA BANK
*vs.*
DAWSON.

EASTERN DIST. *May*, 1839.

ATCHAFALAYA
BANK
*vs.*
DAWSON.

of the grant or charter, the estate or franchise absolutely determines upon failure to perform a condition. *The People* vs. *Manhattan Company*, 9 *Wendell's Reports*, 351, 382-3.

6. In this case a peremptory exception was filed, putting at issue the capacity and power of the plaintiff to sue. By our laws the defendant possesses this right in every case, before answering to the merits, and if he is incapable or unauthorized, he must fail. What can be clearer than that the bank, having forfeited its very existence as a corporation, is defunct and incapable of standing in judgment, either as plaintiff or defendant. See *Benjamin* and *Slidell's Digest*, *verbo Practice, page* 309, *and authorities there cited.*

The judges delivered their opinions *seriatim.*

*Eustis, J.*—The Civil Code of Louisiana provides, by the article 438, for the dissolution of corporations, first, by an act of the legislature in the cases and on the conditions provided; and secondly, by forfeiture, when the corporation abuses its privileges or refuses to accomplish the condition on which they were granted, in which case *the corporation becomes extinct by the effect of the* violation of the conditions *of the act of incorporation.*

It would certainly be difficult to find in our language stronger terms, or to combine them with more force, for the purpose of expressing the consequences of an act. *The corporation becomes extinct* by the effect of the act or the neglect. Without any provision in the charter of a corporation, it becomes extinct by the operation of law, by the effect of the violation of the conditions. It is provided by the act of incorporation of this bank, that on the suspension or refusal of payment in specie for more than ninety days, the charter shall be, *ipso facto, forfeited and void.* The difference between this proviso and the law, as to its meaning, operation and effect, consists in the difference between Latin and English. If either be more positive, it certainly is the text of the code ; by that, the corporation becomes *extinct ;* by the act of incorporation, the charter is *forfeited and void :* in one, *by the effect*

EASTERN DIST.
May, 1839.

ATCHAFALAYA
BANK
vs.
DAWSON.

*of the act;* in the other, *ipso facto.* I do not understand the words, *ipso facto,* as having any other import than the corresponding terms, *by the effect of the act,* made use of in the code. But this is mere verbal criticism. Have they any other legal import? Is there any legal effect flowing from the one, which does not necessarily follow from the other? I think not. If the forfeiture in this case was on a different footing from any other, it is very singular that the legislature should not have expressed their sense clearly to that effect, and not have left a consequence like this to be inferred by implication. Had the word immediately, or any corresponding term been used, had the incapacity to sue, afterwards, been declared, and had provision been made for the preservation of the property, which by this forfeiture is left in a manner unprotected, even by the laws, a very different case would have been presented to us.

The state has a large interest in the banks of this city. On its credit, the capital of five of them having the largest capitals has been provided, for which the state is bound to the holders of its bonds. Independent of the interest which any citizen has in a sound currency, the state has an immense pecuniary interest in maintaining the credit of its banks, which in point of fact furnish the currency of the country. These matters are constantly the subject of legislative care. The attention of the legislature and the people, is directed to them often with fearful anxiety. The connection of the banks with each other, is immediate and inseparable, under the system which has existed by law in this state. It is requiring too much from human credulity to suppose that it was the intention of the legislature to subject the currency of the country to the caprice of a debtor; to render the charter of one bank null and void, for an act which other banks could do with impunity, and when the inevitable consequence would be bankruptcy to all of them, and prostration of the credit of the state. I cannot adopt a construction which would lead to such consequences, *merely by implication,* because I am satisfied that nothing was further from the intention of the legislature, than to produce them.

EASTERN DIST.
May, 1839.

ATCHAFALAYA
BANK
vs.
DAWSON,

'It must be remembered .that no provision has been made by our laws, for the administration of the property of corporations whose charters become forfeited. Whether, on the forfeiture, the property is vested in the several corporato rsas copartners, or whether the state has any interest in the real or personal estate, it is now unnecessary to determine. It is clear, from an examination of various provisions of this charter, that no forfeiture was anticipated by the legislature, necessarily to result from a suspension of specie payments on the part of the bank.

In the 21st section, a penalty of twelve per cent. per annum, is imposed in favor of the holders of any notes or obligations of the bank, on the refusal to pay them in lawful money of the United States. If the bank should be incapacitated at the time from collecting its debts, and had no legal existence to enable the party holding a note to sue directly for his debt, the recovery of the penalty, or even the principal, would, under any circumstances, be so difficult and expensive as to render this clause nugatory.

The 22d section provides, that no dividend shall be made during any suspension of specie payments. The term *dividend* supposes the existence of the bank, and if the bank should be extinct in law, what control could the legislature have over the *property which stockholders might hold in their individual right*, as to the division of their profits among themselves?

By the 27th. section, at the expiration of a remote term, the rail road and turnpike road to be constructed by the bank, with all the warehouses, buildings, engines, waggons and machinery thereto appertaining, revert to the state. Can it be supposed that this right can be defeated at the instance of a debtor to the bank, in a suit against him by the bank to recover a debt lawfully contracted? And that the state has no right to forbear to insist on a forfeiture of the charter, when a right stipulated *expressly* in favor of the state, might be destroyed by the forfeiture, and would be rendered available by the continuance of the charter? Having no doubt as to the intention of the

legislature, none as to the general purport and intendment of the act, and thinking that the expressions used in the charter do not take the case out of the ordinary laws concerning the dissolution of incorporations, it must be considered with reference to them.

The functions of the different branches of our state governments, under their constitutions, have been settled in the different states, and a jurisprudence has been formed in relation to them, which must be considered as the settled law of the land. In reference to this system, we must examine and construe the charters of our corporations, and all grants involving municipal or corporate powers. Our code provides that corporations may be dissolved by *forfeiture*. That term necessarily implies the action of the judicial power when used in relation to corporate franchises. In what manner and at whose instance is the forfeiture to be decreed? Can it be decreed incidentally, or can a forfeiture be pronounced in a suit between a corporation and one of its debtors? These are questions which remain to be considered.

To enforce the forfeiture of the charter of a corporation, proceedings must be instituted to that effect by the state, and unless the power of instituting such proceedings be expressly delegated by law, the state alone possessed it. The state having this power, may forbear to exercise it and waive the forfeiture. Until the forfeiture is judicially decreed; neither the forfeiture nor the cause can be inquired into in another suit, nor can the existence of the corporation be questioned incidentally or collaterally. Such we take to be the established jurisprudence on this subject. 2 *Kent's Commentaries*, 212 *and seq*. *Angell and Ames on Corporations*, *page* 510, and cases there cited. The research of counsel and our own inquiries, have not furnished us with a single case in which these principles have not been admitted. Our attention has been directed to two cases, decided in New-York, which are not considered as affecting in any manner these principles which are established by an unusual concurrence of decision, considering the scrutiny to which the rights of corporations are subjected, and the different views enter-

To enforce the forfeiture of the charter of a corporation, proceedings must be instituted to that effect by the state, and unless the power of instituting such proceedings be expressly delegated by law, the state alone possesses it; and having this power may forbear to exercise it, and waive the forfeiture.

EASTERN DIST.
May, 1839.

ATCHAFALAYA
BANK
vs.
DAWSON.

tained in different parts of the Union, as to the extent and policy of their privileges. The case of *Slee* vs. *Bloom and others*, reported in 19 *Johnson*, 473, was an action by a creditor against the corporators to render them personally liable for the debts of the corporation, and was determined in relation to the right of the creditor. It was predicated on a *voluntary surrender of the corporate rights* of the corporation, on its having ceased to own any property, and from doing any one act manifesting an intention to resume its corporate existence. The case of *Briggs* vs. *Penniman*, 8 *Cowen's Reports*, 396, is of the same character. Both of these cases arose under a statute of New-York, relating to corporations for manufacturing purposes, and the charters were held to be dissolved within the act, so as to give a remedy to creditors. In the case of the Bank of Niagara against Johnson, 8 *Wendell's Reports*, 654, the Supreme Court of the state of New-York, give it as their opinion, that if the corporation whose existence was drawn in question in the case of *Slee* vs. *Bloom and others*, had instituted a suit against a debtor of the corporation, the action would have been maintained. I think that there is nothing in this charter which creates, under our laws, a disability on the part of the corporation to maintain an action for the recovery of a debt.

If the charter under consideration be considered as a contract between the state and the stockholders, by which certain privileges and exemptions are given to the latter, in consideration of the advantage resulting to the public from the construction of a rail road from the Mississippi to Opelousas, and of the reversion of the road with its establishments at the expiration of a certain term, and if this contract has been violated, it certainly would be a matter of common justice, that the party most interested in its being continued in operation, should have the right to be heard in relation to its dissolution ; and that the important rights resulting from the contract should not be divested and lost in a suit to which the state is not and cannot be a party. The fate of contracts of this description, rests on a frail foundation if such be the law.

The act of the 14th of March, 1839, for "the relief of such of the banks whose charters may have been forfeited by a suspension of specie payments, from such forfeiture," appears to have been passed in conformity and with reference to what may be considered as the settled law of the land on this subject. The forfeiture was incurred, and it was remitted by the state, in whose favor it enured, and who alone had the power to enforce or remit it. This is the only sense in which the act is to be received. This act remitting the forfeitures, in general terms, to such of the banks as may have incurred them, necessarily excludes the idea of their non-existence as corporations.

I, therefore, conclude, that the exceptions made by the defendant to the capacity of the plaintiff to sue and maintain this action, be overruled, and that the cause be remanded for further proceedings. The appellee to pay the costs of the appeal.

*Rost, J.*—The plaintiffs, being a corporation established in the state of Louisiana, and endowed with banking privileges, seek to recover from the defendant the amount of a promissory note, discounted by them for his benefit.

The defendant excepted to the action, on the ground that the plaintiffs had suspended the payment of their obligations in gold or silver, and that said suspension had continued for more than ninety days at the time of the inception of this suit, whereby their charter was forfeited, *ipso facto*, and they had no corporate capacity to appear in court or to stand in judgment. The fact of the suspension of specie payments being admitted, the District Court sustained the exception and the plaintiffs appealed.

In order that the question at issue may thus be collaterally inquired into, it is necessary that the charter of the plaintiffs should have become an absolute nullity by the inexecution of the condition on which it had been granted; for as long as it had a vestige of existence left, the condition imposed by it on the corporation, to pay their debts on demand, under

EASTERN DIST.
*May*, 1839.

ATCHAFALAYA
BANK
*vs.*
DAWSON.

the penalty of interest at the rate of twelve per cent. per annum, implies an indefeasible right to collect from their debtors, the means with which alone these debts could be paid. The power to collect the means of paying is antecedent to the obligation to pay, and cannot, in law or good conscience, be separated from it; take that power away, or place difficulties in the exercise of it, which will render it unavailing, and the obligation must cease.

A charter granted by a state does not become absolutely null by the inexecution of the conditions attached to it. A cause of forfeiture cannot be taken advantage of, or enforced against a corporation incidentally, or in any other mode than by a direct proceeding instituted by the government, because it may waive a broken condition of a contract or charter as well as an individual.

It is, then, necessary to examine whether the suspension of specie payments for more than ninety days, rendered the charter of the plaintiffs absolutely null. I feel no disposition to go at length into the investigation, whether, generally speaking, a charter granted by a state becomes absolutely null by the inexecution of the conditions attached to it; the uniform current of judicial decisions in this country has settled that it does not: that a cause of forfeiture cannot be taken advantage of or enforced against a corporation, collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose, and that the government creating it can alone institute such a proceeding, since it may waive a broken condition of a contract made with it, as well as an individual. *Angell & Ames on Corporations*, 510; 2 *Kent's Commentaries*, 312; 9 *Cranch*, 292.

But the counsel for the defendant contends, that although this rule may generally be correct, the legislature have power to say that, if a chartered bank suspends specie payments for more than ninety days, the charter shall ever after be a nullity, of which any one may take advantage, and that they have said so in this instance, by providing that, on the happening of that fact, the charter of the plaintiffs shall, *ipso facto*, be forfeited and void. The words *ipso facto*, it is said, are not generally found in charters; they must amount to something, and therefore they amount to a final judgment of forfeiture. It need not be pronounced at the suit of the state; it exists, *ipso facto*, for the common advantage of all. The premises of this argument may or may not be true, but the conclusion is undoubtedly false.

If other charters do not contain the words *ipso facto*, they

Eastern Dist.
May, 1839.

ATCHAFALAYA
BANK
vs.
DAWSON.

all contain others of similar import, when they are granted upon conditions. Article 438 of the Louisiana Code provides that charters shall be forfeited, when corporations shall refuse to accomplish the conditions on which they were granted; in which case, says the code, the corporation becomes extinct by the effect of the violation of the conditions. This is the general law applicable to all corporations; the language in which it is written appears to me as strong as *ipso facto* or any other words, Latin or English, could make it; and I cannot conceive how the same legal disabilities should not attach in both cases, after the inexecution of the conditions.

In trying to ascertain the meaning and intent of the legislature, the mutual connection and *quasi* solidarity of all our banking institutions, as well as the vital interest which the state has in those who have raised their capital upon its bonds, must be kept in view, and courts of justice are bound to presume that the legislature have retained in their own hands the power necessary to the protection of the public interests, and that they have not so far betrayed their trust as to place, in any event, the honor and the credit, the peace and the prosperity of the state, at the mercy of any dishonest debtor who may choose to defraud a bank out of what he justly owes.

If the charter of the plaintiffs became an absolute nullity, and their debtors have the right to inquire collaterally into the forfeiture, that right exists for all and each of them. It is as perfect for a debt of twenty dollars as for one of twenty thousand; so that, on all claims under three hundred dollars, a judgment without appeal to this court might be rendered by a parish judge, or even by a justice of the peace, the effect of which would be to shake to its foundation the currency of the country, to destroy the plaintiffs, to ruin the credit of all the other banks, and probably to render the state liable to pay at once the millions of bonds which it has issued for their benefit. These consequences are too serious to be inflicted upon the country by a forced construction of the words *ipso facto*. The complaints made against banks

EASTERN DIST.
May, 1839.

ATCHAFALAYA
BANK
vs.
DAWSON.

are often just, in relation to the few individuals who manage, or mismanage them. I am no advocate of the system, but the many who own the stock are generally free from all blame, and the earnings of honest industry thus invested are not to be wantonly sacrificed. It may have been impolitic and unwise to grant the charters, but the legislature, in granting them, contracted the obligation to protect the private interests which were to arise under them.

Again, if the charter became an absolute nullity by the mere fact of the suspension, it would be so, independently of the causes of that fact, and unforeseen accidents or overpowering force would create no exception in favor of the plaintiffs; the naked fact of the suspension of specie payments for more than ninety days, could alone be inquired into upon the issue. Let the bank be robbed of all its means by main force ; let its vaults be emptied, and the proof of all its credits be obliterated and destroyed by an invading army ; no judicial inquiry could extend beyond *ipsum factum,* and proof of that isolated fact would in all cases alike create the disability.

Unless the legislature had expressly said, that, upon the happening of the suspension during more than ninety days, the nullity of the charter would be absolute, and any one might take advantage of it, collaterally or otherwise, I cannot give to their acts a construction which would take away from them all power to protect the interests and the currency of the state when they most require protection ; indirectly lead to the violation of constitutional rights, and mete out the same punishment to gross negligence and unavoidable misfortune    The ground assumed in argument, that a corporation must be viewed in all things as an individual, and that the charter, in this instance, is nothing more than a contract with a resolutory condition, and subject to the law of contracts, cannot avail the defendant. The condition in that contract was to be performed by the bank; and article 2042 of the Louisiana Code expressly provides, that when the condition is to be performed by either party, the contract is never dissolved of right, but the dissolution must be sued

EASTERN DIST.
*May*, 1839.

ATCHAFALAYA
BANK
*vs.*
DAWSON.

for, and the party in default may, according to circumstances, have a further time allowed him for the performance of the condition.

If the charter of the plaintiffs had become void for every thing else, it must, from the necessity of the case, have continued to exist for the purposes of liquidation, because the legislature made no provision in the charter for the settlement of the affairs of the corporation in any other manner. The right to use the corporate name for the purposes of liquidation, is all that the plaintiffs require to maintain their action; but I am of opinion that, notwithstanding the words *ipso facto*, the only effect of the suspension of specie payments by the plaintiffs was to give the state the right to claim the forfeiture, in an action instituted for that purpose. Nothing thereafter, but the will and pleasure of the legislature, could prevent or retard the exercise of that right; but if, from motives of expediency, it was not exercised, the corporation went on to accomplish the purposes of its creation, and was entitled to the protection of the laws. Although it might have forfeited its corporate life, it continued to live as long as the state did not claim and obtain the forfeiture; and as it has since been waived, there has been no interruption in its existence.

The *clause in the bank charters of this state, which declares that in case of a suspension of specie payments for more than 90 days, " the charter shall be ipso facto forfeited and void; gives to the state the right to claim the forfeiture in an action instituted for that purpose; and although the bank may have forfeited its corporate life, it continued to live as long as the state did not claim the forfeiture.*

The legislature have shown their intendment of the condition of the charter, by the course they have since pursued; they have, in general terms, reinstated all the banks of the state in all the powers, rights and privileges conferred upon them by their respective charters, notwithstanding any forfeiture thereof, to the same extent as if no such forfeiture had ever existed. If they had considered that the charter of the plaintiffs was an absolute nullity, that relief would have been insufficient for them; they would have required a special act, giving them a new charter, or at least reviving the old one, section by section, and their officers would all have been re-appointed. The fact that all the banks were embraced in one common measure of relief, shows that the legislature was of opinion that the suspension of specie payments had placed them all in the same situation, whether or not their charters were to be forfeited *ipso facto*.

EASTERN DIST.
May, 1839.

ATCHAFALAYA
BANK
vs.
DAWSON.

I am satisfied that the plaintiffs had capacity to maintain their action, and that the judgment of the District Court must be reversed, the exception of the defendant overruled, and the case remanded to be proceeded in according to law.

*Martin, J.,* presiding.—When the banks of this city first suspended their payments in specie, in 1813, I happened to be the officer on whom devolved the responsibility of determining whether a forfeiture of their charters resulted from this circumstance ; and if it did, whether it was the interest · of the state to avail itself of it.

It is unimportant that I should state the conclusion I came to on the first proposition.

On the second, I thought it would be imprudent in me to provoke a judgment against the banks, as it would render it necessary that measures should be taken to effectuate a liquidation—measures which could more properly be provided by the legislature than the courts of justice. I therefore waited for the meeting of the legislature, when I was relieved from all responsibility on this head by a promotion to a seat in this court. The gentleman who succeeded me and still filled the office of attorney general, when the banks for the second time suspended specie payments, appears to have been of opinion that this circumstance did not authorize, or, at least, did not require his official interference. Public opinion has powerfully manifested itself in favor of the conclusion he came to. The legislature in the years 1815, 1838 and 1839, sanctioned the conduct of the law officers of the state. At the last session, to put the question at rest, a law was passed " to relieve such of the banks of this state, whose charters may have been forfeited by a suspension of specie payments, from such forfeiture." The first section of this act provides, that such of the banks of this state as may have forfeited their charters by a suspension or refusal of the payment of their notes or obligations in specie at any time prior to the passage of this act, are hereby declared reinstated in all the powers, rights and privileges conferred upon them by their respective charters, notwith-

*Martin, J.*—
The legislature
possessed the
power to remit
any forfeiture
that resulted to
the bank char-
ters by the sus-
pension of spe-
cie payments;
and the exercise
of that power in
the act, for the
relief of the
banks, approved
March 14, 1839,
relieves them
from all penal-
ties incurred by
the non-payment
of specie.

standing any forfeiture thereof, to the same extent as if no such forfeiture had ever existed. In the meanwhile, the defendant in the present case, raised the question of for- feiture in the court of the first district, by an exception to the capacity of the plaintiffs to stand in judgment by their corporate name. The exception was sustained and the suit dismissed.

It has appeared to me absolutely unnecessary to test the correctness of the decision of the District Court, because, admitting that it was consonant to law at the time it was pronounced, it becomes our duty to reverse the judgment; the law having been changed since its rendition. In the case of the *State* vs. *Johnson et al.*, 12 *Louisiana Reports*, 547, this court held, "that when an act creating an offence. is repealed, even after judgment in the inferior court, the judgment must be reversed." In that case, it is true, the act had been absolutely repealed. In the present, it has not been done, but it remains in full force for the future; its effect, however, on past transactions, is absolutely destroyed.

I do not wish it to be understood, that the fact of my having taken a different view of this case, from the other members of the court, is to be considered as a dissent from their opinions; I only consider the ground of the forfeiture having been remitted by the act of the legislature under consideration, as sufficient upon which to rest the decision of the case.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed; the defendant's exception overruled and the case remanded for further proceedings according to law, the appellee paying the costs of the appeal.