## No. 6861.

### STATE EX REL. SAM LISSO VS. W. P. PECK.

The mere failure of a party who has been elected to a constitutional office to qualify within thirty days from the date of his commission, can not be construed into an abandonment of the office.

A compact with his deputy made by a clerk of court, which stipulates that the deputy shall perform the duties of the office, and the clerk shall receive a proportion of the official fees, or a fixed monthly sum, is not such a transaction as will forfeit the clerk's right to his office, and thus create a vacancy in it.

APPEAL from the Seventeenth Judicial District Court, parish of Red River. *Pierson, J.* Jury trial.

*W. Pike Hall,* District Attorney, *L. B. Wathins, Elam & Sutherlin,* and *J. F. Pierson* for plaintiff and appellant.

*John B. Roberson* and *John L. Scales* for defendant and appellee.

The opinion of the court was delivered by

MANNING, C. J. The relator brings this suit under the Intrusion Act, being joined by the district attorney, for the office of clerk of the District court for Red River parish, alleging that he is entitled thereto by virtue of an appointment by the Governor made to fill a vacancy.

The respondent denies there was a vacancy, and claims that he was and is the clerk by virtue of an election in November 1876, and that he has been commissioned and has qualified, and has acted as clerk ever since his qualification.

The case was tried by a jury, who returned a verdict for the defendant, and judgment being entered accordingly, the relator prosecutes this appeal.

It is conceded that the defendant was elected clerk in November 1876. He was commissioned December 21, 1876 by the then acting Governor. He was again commissioned by Governor Nichols on 16 January 1877. On the 19th of that month he appears to have taken an oath as clerk before one Honoré, styling himself Secretary of State, which was not a qualification because of want of official status of the person thus styling himself, since we take judicial cognisance of the fact that W. A. Strong was Secretary of State at that time. He did not attempt to qualify further until later—indeed his commission from Governor Nichols was not delivered manually to him until between the 1st. and 10th. of March, although he knew it had been brought up from New Orleans shortly after its date, and was in the possession of Woessor who brought it. His qualification was accomplished on May 7. 1877, but he had presented his official bond to the District Judge for approval a week or ten days before that day.

Meantime the old incumbent Wester held over and discharged the duties of clerk, but he had been elected sheriff at the election of the

previous November, and qualified to that office April 30, 1877. On that day he vacated the clerk's office. Peck was already endeavoring to qualify as clerk. About that time, or within the three preceding days, he had presented his bond for approval to the judge at his residence in a neighboring parish and it was rejected. The seventh of May was the opening day of the term of the District court for Red River parish. No one had qualified as clerk, at the usual hour for opening court, and it was adjourned until the following morning.

Peck gave a satisfactory bond and took the oath of office on the 7th. after court had been adjourned—a few minutes before 12 o'clock as some witnesses say, two or three hours later, according to others. He took possession of the office on same day, and has been clerk ever since.

On the morning of the 7th. of May several lawyers in attendance on the court telegraphed the Governor there was no clerk. He appointed Lisso, the relator, immediately, who having received the commission on the 14th, qualified on the 18th. and instituted this suit on the following day.

We think his appointment bad. There was no vacancy to fill.

The grounds upon which the relator relies are, that Peck vacated his office of clerk by failing to give bond within thirty days from the date of his commission, to support which sec. 351 of the Revised Statutes of 1870 is cited, and that he had sold the office to D. H. Hayes which is contrary to good morals and public order.

We may remark here the inconsistency between the two pleas, for if the office was vacant after the expiration of thirty days from the date of Peck's commission, and his right to it had lapsed from that time, then he had no office to sell in May following. But it can scarcely be seriously contended that the right to a constitutional office is *ipso facto* lost by failure to comply with a directory provision of a statute upon bonds, the object and purpose of which is to designate the persons who shall approve official bonds, to prescribe their formalities, where the sureties must reside, and other cognate matters.

The legislature has not declared that failure to execute a bond within thirty days shall operate *ipso facto* a divestiture of a constitutional office, though such failure may well be considered as a presumption of abandonment, and until it does declare what acts or omissions of the officer elect shall constitute a conclusive presumption of abandonment, if indeed it has that power, it is not for us to do so. Under the facts of this case, the presumption is against an abandonment by the defendant. He had twice attempted to qualify before Wester vacated, and his bonds were rejected. So far from abandoning his right to the office, his third bond was tendered and accepted before the qualification of the relator.

State ex rel. Lisso vs. Peck.

Nor do we think the arrangement made by Peck for performing, or having performed the duties of his office properly, is to be denominated a sale of its functions and franchises, or if a sale, however reprehensible, that it operates *ipso facto* a loss of the office and a consequent vacancy. The recital of the arrangement, as fully disclosed by the evidence, will rather shew that the parties do not merit the harshness with which the relator's counsel have characterized their conduct.

Peck agreed with Hayes that the latter, whom he appointed his deputy, should perform all the duties of the office, and that himself should receive either a proportionate part of the fees, or a stated sum each month. What was the motive for this agreement does not very clearly appear. It is in one place either stated or hinted that Peck could not give bond unless he made that agreement. There were persons who were willing to become his bondmen, provided he would place a responsible and competent deputy in the office, who should actively discharge its functions, while himself would be delegated to the more congenial occupations of his 'retail saloon' in another quarter of the village. Certain it is, that the arrangement contributed to the dispatch of business, and it does not want parallel cases either in the past or present to justify it. The frequency with which such arrangements are made redeems this from the reproach of singularity, and relieves it from the suspicion of bad intent.

The relator has failed to convince us that his appointment was made under circumstances justifying it, and he has therefore no right to the office he demanded.

Judgment affirmed.