STATE OF NEBRASKA, EX REL. GEORGE W. BERGE, V. ISAAC W. LANSING ET AL.

FILED NOVEMBER 20, 1895.   No. 7619.

1. **Office and Officers**: TIME TO QUALIFY: BONDS. Sections 7, 15, and 17, chapter 10, Compiled Statutes, should be construed together, and when so construed the effect of section 17 is to require one who has been re-elected or re-appointed to an office to qualify therefor by taking the oath and filing the bond, where a bond is required, in the same manner and within the same time as one for first time elected.

2. ——: ——: ——. Section 15, chapter 10, and section 101, chapter 26, Compiled Statutes, are not in conflict and are *in pari materia* and should be construed together. Section 101 provides that certain events shall create vacancies in office. Section 15 adds another event creating a vacancy, to-wit, neglect of the person elected or appointed to have executed and approved, and to file within the time provided, his official bond.

3. ——: ——: ——. Section 15, chapter 10, Compiled Statutes, providing that "If any person elected or appointed to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant," construed, and *held* to create a condition precedent to the right of a person so elected or appointed to be inducted into office. NORVAL, C. J., and RAGAN, C., dissenting.

4. ——: ——: ——. *Held, further,* That such provision is self-executing, and that unless the official bond, where one is required, is filed within the time provided by law, the person elected loses all right to the office and the vacancy can be filled without any

State v. Lansing.

previous judicial determination of the fact.    NORVAL, C. J., and RAGAN, C., dissenting.

5. ———: VACANCIES: CONSTITUTIONAL LAW.    Section 20, article 3, of the constitution, providing that "All offices created by this constitution shall become vacant by the death of the incumbent, by removal from the state, resignation, conviction of a felony, impeachment, or becoming of unsound mind," does not prohibit the legislature from providing that vacancies in office may arise from other events, the state constitution being restrictive in its character and not a grant of power.

6. ———: ———.    It seems that a distinction exists between the ousting from office of one already legally inducted and the exclusion of one not yet inducted because of his failure to perform a condition precedent.

7. ———: ———: COUNTY JUDGES.    Under existing constitutional and statutory provisions, where a vacancy occurs in the office of county judge and the unexpired term exceeds one year, it should be filled by election.    Whether it may be filled by appointment provisionally until the time for a general election, _quære_.

8. Elections: PUBLICATION OF NOTICE.    The validity of an election does not depend upon the publication of the election notice. If, under existing circumstances, a particular office is to be filled, an election for that office is not invalid because the filling thereof was not included in the published notice of election, at least where it appears that the electors generally were apprised of the fact and voted on the question.

ERROR from the district court of Lancaster county. Tried. below before TIBBETS, J.

See opinions for reference to authorities.

_C. C. Flansburg, W. M. Morning,_ and _G. W. Berge,_ for plaintiff in error.

_Allen W. Field, J. R. Gilkeson, N. Z. Snell,_ and _E. P. Brown, contra._

IRVINE, C.

The essential facts charged in the information herein are as follows: That at the general election of 1891 Isaac

W. Lansing was elected county judge of Lancaster county, and that he duly qualified and discharged the duties of his office; that at the general election in 1893 Lansing was re-elected to said office and a certificate of election issued to him, but that he did not execute any official bond or file the same in the office of the county clerk within ten days after the 4th day of January, 1894, but that on the 25th day of January, 1894, Lansing did file a good and sufficient bond, which was on the 26th day of January approved by the county board. The relator then charged that by virtue of the failure of Lansing to file his official bond within the time provided by law the office became vacant; that the relator was nominated by two political parties entitled to have their nominations placed upon the official ballot as a candidate for county judge to fill the vacancy so created; that the county clerk in the notice of election for 1894 did not include the office of county judge as one of the offices to be filled, but that he placed the name of the relator and the name of another candidate upon the official ballot and upon the sample ballots, which were duly distributed, and that the voters had general knowledge of the candidacy and of the fact that votes were being cast for said office; that the total number of votes cast in said county at the election of 1894 was 12,060; that there were cast for Zara Wilson for county judge 1,663 votes, and there were cast for relator 4,746 votes; that said vote was duly canvassed and the relator declared elected, and the certificate of election issued to him; that the relator executed a good and sufficient official bond and took the oath of office, which was duly indorsed upon said bond; and that the county board, in pursuance of a writ of *mandamus* issued from the district court, within due time approved said bond; that relator was eligible to the office of the county judge. It is further charged that at the time proceedings were brought one Joseph Wurzburg was temporarily discharging the duties of county judge by appointment by the county board

during the temporary absence and disability of Lansing. Judgment of ouster was prayed against Lansing and Wurzburg. The district court sustained a general demurrer to the information and entered judgment for the respondents.

The first question presented by the record, and the question of chief importance in the case, is whether the failure of Lansing to present his bond within the time provided by law deprived him of the right to the office. The statutes bearing upon the subject are as follows:

Compiled Statutes, chapter 10:

"Sec. 5. Official bonds, with the oath indorsed thereon, shall be filed in the proper office within the times as follows: Of all officers elected at any general election on or before the first Thursday after the first Tuesday in January next, succeeding the election; of all appointed officers within thirty days after their appointment; of officers elected at any special election, and city and village officers, within thirty days after the canvass of the votes of the election at which they were chosen.

"Sec. 7. The official bonds of all county, precinct, and township officers shall be approved by the county board. * * * All such bonds shall be filed and recorded in the office of the county clerk. * * *

"Sec. 15. If any person elected or appointed to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant, and such vacancy shall thereupon immediately be filled by election or appointment as the law may direct in other cases of vacancy in the same office.

"Sec. 17. When the incumbent of an office is re-elected or re-appointed he shall qualify by taking the oath and giving the bond as above directed; but when such officer has had public funds or property in his control, his bond shall not be approved until he has produced and fully accounted for such funds and property; and when it is ascer-

tained that the incumbent of an office holds over by reason of the non-election or non-appointment of a successor, or of the neglect or refusal of the successor to qualify, he shall qualify anew within ten days from the time at which his successor, if elected, should have qualified."

Compiled Statutes, chapter 26:

"Sec. 101. Every civil office shall be vacant upon the happening of either of the following events at any time before the expiration of the term of such office, as follows: 1. The resignation of the incumbent.   2. His death.   3. His removal from office.   4. The decision of a competent tribunal declaring his office vacant.   5. His ceasing to be a resident of the state, district, county, township, precinct, or ward in which the duties of his office are to [be] exercised, or for which he may have been elected.   6. A failure to elect at the proper election, there being no incumbent to continue in office until his successor is elected and qualified, nor other provisions relating thereto.   7. A forfeiture of the office as provided by any law of the state. 8. Conviction of any infamous crime, or of any public offense involving the violation of his oath of office.   9. The acceptance of a commission to any military office, either in the militia of this state, or in the service of the United States, which requires the incumbent in the civil office to exercise his military duties out of the state for a period not less than sixty days."

Lansing in 1893 was elected as his own successor, and section 17 is, therefore, applicable to the case.   The effect of this section is to require that one who is re-elected to an office shall qualify by taking a new oath and giving a new bond "as above directed;" that is, as directed in regard to officers for the first time elected, by the former provisions of the chapter in which section 17 appears.   This requires conformity with the provisions of sections 5, 7, and 15 above quoted.   The object of section 17 was manifestly to place one re-elected to an office, so far as qualifying for the

office is concerned, upon the same footing as one for the first time elected.    Therefore sections 15 and 17 must be read together as if section 17 read " When the incumbent of an office is re-elected or re-appointed, he shall qualify by taking the oath and giving the bond as above directed.    And if any incumbent of an office re-elected thereto shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant."    The provision for vacancy because of the failure to file the bond within time is not repugnant to the provisions of section 101 above quoted.    It is practicable to construe the two sections together, and they should, therefore, be so construed, being *in pari materia,* and not conflicting. Section 101 provides for nine cases of vacancy, all but one contemplating events happening after the induction of the officer into office.    Section 15 adds another cause of vacancy, relating to the failure of the person elected to comply with the conditions precedent to his induction.    A difference in the language of these two sections is important, and it may be well at this point to call attention thereto. By section 101 it is simply provided that the office " shall be vacant upon the happening of either of the following events."    By section 15 it is provided that a failure to have the bond approved and filed within the time limited by law shall "*ipso facto*" create a vacancy.

It is contended by the relator that by virtue of section 15 Lansing's failure to have his bond approved and filed within the time provided by law of itself created a vacancy in the office; that by such failure Lansing lost his right to the office and was not reinvested with the right by the subsequent approval of his bond.    By the respondents it is contended that the provisions of section 15 are not self-executing; that, so far as the time for filing the bond is concerned, the statutes are directory only; that Lansing, notwithstanding his default, had a defeasible title, and that

the subsequent approval of his bond was a waiver of his default and rendered his title indefeasible. The application of the statute to all officers renders the question of considerable general importance, and we have, therefore, sought light upon the construction of the act from the decisions of other courts with relation to statutes analogous in their object.

In some of the cases cited in the respondents' brief, or in opinions referred to in that brief, the expressions on the subject are entirely *obiter*. Thus, in *Creighton v. Commonwealth*, 83 Ky., 142, the person elected had never made any attempt to qualify, and what was said in regard to irregular qualification was entirely foreign to the case. In *State v. Hadley*, 27 Ind., 496, the question was not as to the effect of a failure to file the bond within time, but as to the event from which the time began to run, and the court held that properly computed it had not expired when the bond was filed. *State v. Ring*, 29 Minn., 78, was a prosecution of a treasurer for embezzlement for not paying over moneys to a successor in office. A resolution appointing the successor attached to the appointment a condition that bond should be given in two days. The bond was not given for three days. The court held that the county commissioners could waive and had waived the performance of this condition, but as the condition was created by their own resolution and not by statute, this case throws no light on the present. *State v. Colvig*, 15 Ore., 57, was a case arising under a statute which contained no provision fixing the time for filing the oath of office. The court held that a fair construction of the law gave the officer some time after his term began to file the oath and then added that statutes fixing the time are generally construed as directory, an observation purely theoretical, inasmuch as there was no statute fixing the time.

. There is another class of cases which were suits on official bonds tendered and approved after the statutory time.

The best considered of these cases hold the bond valid, not
because the statute fixing the time was directory merely,
but because the officer became a *de facto* officer, or because
the officer and his sureties were estopped from asserting
the invalidity of the bond, they having tendered it and it
having been accepted and the officer having acted under it.
Such cases are *Sprowl v. Lawrence,* 33 Ala., 674; *State v.
Porter,* 7 Ind., 204; *Crawford v. Howard,* 9 Ga., 314;
*State v. Toomer,* 7 Rich. [S. Car.], 216; *Dunphy v. Whip-
ple,* 25 Mich., 10; *Williams v. School District,* 21 Pick.
[Mass.], 75; *McElhanon v. Washington County,* 54 Ill.,
163; *City of Chicago v. Gage,* 95 Ill., 593. All these cases
did not go upon the ground stated. Thus, *State v. Porter,*
*supra,* merely says that the failure of the officer to give
bond within the time provided "did not necessarily vacate
his office," an ambiguous expression which is not elucidated,
as we shall hereafter see, by the later decisions of the In-
diana court. An analysis of the opinion in *State v. Toomer,*
·*supra,* shows that the court gave three reasons for holding
the bond valid :· First, that its invalidity was no defense
to sureties; second, that the principal was an officer *de facto ;*
and third, that the statute was directory only. But the
opinion cites three prior South Carolina cases. (*Kottman v.
Ayer,* 3 Strob., 92; *McBee v. Hoke,* 2 Spears, 138*; *Hampton
v: Levy,* McCord, 107.) The first two of these cases went
upon the ground that the officer was one *de facto,* and the last
upon the ground that the parties to the bond were estopped
to deny its validity. Having given two sufficient reasons,
·founded upon prior adjudications, for the result reached, the
superadded statement that the statute was directory thereby
lost much of its force. The Illinois cases are distinctly placed
on grounds other than those taken in most of the cases in
this. class. In *McElhanon v. Washington County* the court
·said that the statute authorized a new bond to be given when-
ever the original became insufficient, and that it appearing
that the bond sued on was given at a time later than the

original bond should have been filed, it would be presumed that it was a new bond given under the statute to take the place of the original.    This case, therefore, throws no light on the present.    In *City of Chicago v. Gage* the statute under consideration provided that if the bond were not given in the time provided by law the person elected "shall be deemed to have refused .the office;" and another provision of the statute was that in such event the office "shall become vacant."    The court in this case based its decision upon the ground that the statute was directory, doing so chiefly from considerations of public policy and reluctance to enforce what the court considered a forfeiture.    We are of the opinion that the decision would rest on safer ground if it proceeded upon the reasons given in a majority of such cases; but as the court saw fit to rest it upon the directory character of the statute, it is a case which would support the contention of respondents were the statutes alike.    But actions upon bonds given out of time and direct proceedings to oust an officer for failing to qualify according to law present very different questions for consideration.    Before leaving this class of cases we wish to observe that in a number of them the court held the bond invalid as an official bond, but sustained it as a voluntary bond, and wherever this course was adopted the decisions tend rather to sustain the position of the relator than that of the respondents.

A few of the cases were collateral attacks by impeaching the validity of the acts of an officer who qualified too late. *Stokes v. Kirkpatrick*, 1 Met. [Ky.], 138, was a motion to quash a summons on this ground.    The statute provided that the failure to qualify as required by law "shall be a misdemeanor, and on conviction such officer shall be removed from office by judgment of the court where the conviction is had."    Another provision of the statute was that in such case the office "shall be considered vacant."    The court held, construing these two provisions together, that

the office only became vacant on conviction and judgment. We do not see how a different result could be reached under such a statute; but it has no application to this case.   Of a very different character is the case of *Clark v. Ennis*, 45 N. J. Law, 69.   The statute provided that if such officer "shall neglect, refuse, or be unable to give bond with sureties as aforesaid, agreeably to the directions of this act, at the time or times herein limited, the office of such sheriff shall immediately expire, and be deemed and taken to be vacant, and if such sheriff shall thereafter presume to execute the office of sheriff, then all his acts and proceedings done under color of office shall be absolutely void." The court, reviewing decisions under different statutes, reached the marvelous conclusion that the office did not expire and that the sheriff's acts and proceedings were not void.   The constitutionality of the statute was not doubted, and the case is perhaps the clearest instance which has ever fallen within the writer's observation of a court's undertaking by judicial interpretation to repeal a valid legislative enactment, because in the judgment of the court a different law would be more desirable.   Such authority we emphatically refuse to follow.

Still another class of cases is illustrated by *Ex parte Candee*, 48 Ala., 386, and *State v. Carneall*, 10 Ark., 156. These were cases whereby it was sought to oust an officer who had already been regularly inducted into office, and they proceed upon the ground that an office so acquired is a vested property right of which the incumbent cannot be divested without due process of law.   That the court in each case took this view is evident from later decisions of the same states.   Thus, *State v. Tucker*, 54 Ala., 205, expressly overrules *Ex parte Candee*, as well as *Sprowl v. Lawrence, supra*, in so far as those cases expressed the opinion that the failure to qualify within time operated as a defeasance and not as a condition precedent, and *Falconer v. Shores*, 37 Ark., 386, distinguished *State v. Carneall*, on

the ground that the latter was a proceeding to oust an officer already inducted, while *Falconer v. Shores* raised the question as to whether the officer had ever been properly inducted; the court holding that he had not, because he did not tender his bond within the time provided by law, that this was a condition precedent to his taking office, and that he had thereby lost all right thereto.

We now reach a class of cases more directly in point, and several of these, if we disregard the peculiar phraseology of our own statute, sustain the respondent's contention. *State v. Churchill*, 41 Mo., 41, was an action in *quo warranto*. The statute is not cited, but, as nearly as the writer can ascertain, the statute then in force required the giving of a bond in ten days, but contained no provision for the consequences of a failure to give it; while another section provided for the renewal of bonds and for a forfeiture of the office for failure to properly renew them. The court held that the provision in regard to original bonds was directory only, and we can see no fallacy in that conclusion under such a statute. Other Missouri cases are to the same effect. *Worley v. Smith*, 81 N. Car., 304, was also *quo warranto*, and the court held that the incumbent remains legally in office until ousted by judicial proceedings. The statute is not quoted, but from the language of the court it would seem that its provisions were manifestly to that effect, although the court does not intimate what the proceedings should be, and unless the statutes provided special proceedings, we cannot see how they could be brought unless by *quo warranto*, as was attempted. *State v. Ruff*, 4 Wash., 234, was an action in the nature of *quo warranto*. The statute provided that for a failure to qualify within time the office "shall become vacant." The court said that "courts abhor forfeitures," and that therefore the statute should be construed as directory, or, to use the precise language of the court, "declaratory," but adds that if the statute had provided that the office should "*ipso facto*" become va-

cant, a different question would be presented. From the decision two judges out of five dissented; and to courts inclined to adopt the policy of construction followed by the New Jersey court in *Clark v. Ennis,* we would commend a perusal of the dissenting opinion of Judge Dunbar in *State v. Ruff,* who said : " Nor do I think that a plain statutory enactment, setting forth specifically circumstances under which an office becomes vacant, should be construed out of existence by the mere statement of the theoretical rule that ' forfeitures are abhorred by the courts.' What the courts abhor should be of very little consequence. The vital question is, what did the legislature intend? I think it is an excellent idea for courts to give to statutory language its plain and ordinary meaning." In *Commissioners of Knox County v. Johnson,* 124 Ind., 145, there was an appeal from the refusal of the commissioners to accept a bond tendered out of time. The statute provided that on a failure to present the bond within time the office "shall immediately become vacant." The opinion of the court, written by Judge Elliott, is to the effect that the statute was directory, and not mandatory, and that the failure to file the bond within time did. not vacate the office. On this point the court cites, among other cases, *State v. Porter,* 7 Ind., 204, and *Mayor of City of Indianapolis v. Geisel,* 19 Ind., 344. We have already commented upon *State v. Porter.  Mayor of City of Indianapolis v. Geisel* grew out of the following facts: Geisel and others had been elected councilmen from the eight and ninth wards of Indianapolis. They took the oath of office and presented their certificates of election. Thereupon a motion was made in the council to exclude them, to which an amendment was offered as follows: "That as too many democrats lived in said wards (eighth and ninth), the judiciary committee be directed to report an ordinance repealing the ordinance creating said wards." This motion, with the amendment, was carried. The circuit court issued a mandate commanding the council to admit

the excluded members, and the supreme court affirmed the
judgment in a brief opinion discussing no question of law.
The syllabus of the case is as follows: "There is no point
of interest decided herein, but the facility with which objects
may sometimes be attained by the 'law's delay' is well
illustrated." The other Indiana cases cited by Judge El-
liott were cases decided without an opinion, simply referring
to the last case. On this slender basis of authority Judge
Elliott based his opinion, and the court its decision, in
*Commissioners of Knox County v. Johnson,* apparently for-
getting and in nowise referring to the fact that in *State v.
Johnson,* 100 Ind., 489, the court had unanimously held,
Judge Elliott himself writing the opinion, that, under a
statute providing that for a failure to present his bond
within the time limited the "office shall become vacant,"
the person elected lost all right to the office and could not
thereafter present his bond and require its approval. With
all due respect to the Indiana court we must protest that
such a line of decisions does not appeal to one's reason.
Of all the cases cited in support of the position of the
respondents, that most nearly in point is the case of *Atch-
afalaya Bank v. Dawson,* 13 La., 497. The charter of
the bank provided that for a failure or refusal to pay specie
for the period of ninety days, the charter should "become
*ipso facto* forfeited." The court held that this statute did
not mean what it said; that the words "*ipso facto*" lent
no force to the act, and that the failure to pay specie was
only a ground of forfeiture and did not work a forfeiture;
but the court seems to have been moved to a decision of
this case by the fact that it was an attempt by collateral
proceedings to question the existence of a corporation and
did not consider that its decision had any bearing on a case
like the present, because *State v. Beard,* 34 La. Ann., 273,
was a case precisely like the case we are considering, the
statute providing that the failure to qualify within the time
provided "shall operate a vacation of such office," and the

State v. Lansing.

court held that a failure to so qualify within the statutory time forfeited all rights to the office, that the office by that fact became vacant and an appointment might be made to fill the vacancy, citing *Hurford v. City of Omaha*, 4 Neb., 336.

So far as the cases we have already referred to offer any support for the position of the respondents, they are met by the following cases holding that a failure to qualify within time is a failure to perform a condition precedent to the right of taking the office. For the sake of brevity we omit a full quotation of the statutes and quote only the words which follow what is, in substance, the premise that "a failure to qualify within the time provided," etc.: "Shall forfeit his right to the office." (*Falconer v. Shores*, 37 Ark., 386.) "Becomes vacant." (*People v. Taylor*, 57 Cal., 620; *People v. Perkins*, 85 Cal., 509; *People v. Shorb*, 100 Cal., 537.) "Shall become vacant." (*State v. Matheny*, 7 Kan., 327.) "Vacates his office." (*State v. Tucker*, 54 Ala., 205, overruling, on this point, *Sprowl v. Lawrence*, 33 Ala., 674, and *Ex parte Candee*, 48 Ala., 386, relied on by respondents.) "Deemed vacant." (*In re Office of Attorney General*, 14 Fla., 277.) "Shall be vacant." (*State v. Johnson*, 100 Ind., 489.) "Shall operate a vacation of office." (*State v. Beard*, 34 La. Ann., 273.) "Shall thereby become vacant." (*Bennett v. State*, 58 Miss., 556.) "Shall immediately become vacant." (*People v. Common Council of City of Brooklyn*, 77 N. Y., 503.) "Before entering upon the discharge of any functions as officers of this state, must take and subscribe the following oath." (*Childrey v. Rady*, 77 Va., 518; *Owens v. O'Brien*, and three other cases, 78 Va., 116.)

It will thus be seen that the overwhelming weight of authority, under statutes much less mandatory than our own, is to the effect that where a time is prescribed within which one in order to be inducted into an office must take the oath or file a bond, the taking of the oath or the filing

of the bond is a condition precedent to the right to enter upon the office, and that the right is absolutely lost by a failure to perform the condition within the time limited. There is no question involved in this case as to whether the holding of an office is a vested property right. It is not here contended that there is anything in our constitution which prohibits the legislature from requiring an oath of office or the giving of a bond as a condition precedent to the exercise of official functions. The only question is whether the legislature has required it. Were the statute much less distinct in its terms, and were we to follow the general current of authorities elsewhere, we would be obliged to hold that such a condition precedent did attach; but evidently for the purpose of permitting no room for doubt upon the question, the legislature has adopted language which, as strongly as any language could, conveys the idea that the bond must be filed within the time limited or the person elected loses all right to the office. The language of the statute is that a neglect to have the bond approved and filed within the time limited shall " *ipso facto* " vacate the office. If possible, in construing a statute every word thereof must be given effect, and if we give the term " *ipso facto* " any effect it must be in the way indicated. The term has in law a very well defined signification. Rapalje's Law Dictionary defines it " by the very act itself." Anderson's Law Dictionary defines it " by the mere fact." Bouvier defines it " by the fact itself. By the mere fact, a proceeding *ipso facto* void is one which has not *prima facie* validity but is void *ab initio.*" Possibly a closer translation of the Latin term would be " by the fact itself," but under any possible construction of the term, if we are to give it any force, it means that the failure to file the bond within the time limited shall of itself operate a vacation of the office, and not that a judgment of a court based upon that failure shall be required to operate such vacation. When the question was first proposed to us, we recalled to our minds the use of

the term in discussions of the law in relation to forfeitures, for the purpose of distinguishing forfeitures which took place because of office found from forfeitures *ipso facto,*— that is, by reason of the event creating the forfeiture independent of judicial action; but the generally accepted signification of the term, coupled with its use in cases like the present, renders it unnecessary for us to investigate the authorities from the standpoint suggested.    Among the cases presenting questions precisely like that before us, in which the term "*ipso facto*" is used in the sense of causing the failure to file the bond itself to vacate the office without the necessity of any judicial proceeding to accomplish that object, are the following: *State v. Beard,* 34 La. Ann., 273; *State v. Peck,* 30 La. Ann., 280; *State v. Cooper,* 53 Miss., 615; *Bennett v. State,* 58 Miss., 556; *Kearney v. Andrews,* 10 N. J. Eq., 70; *People v. Carrique,* 2 Hill [N. Y.], 93; *People v. Nostrand,* 46 N. Y., 381; *Foot v. Stiles,* 57 N. Y., 399; *People v. Green,* 58 N. Y., 295; *State v. Ruff,* 4 Wash., 234; *King v. Godwin,* Douglas [Eng.], 398; *Milward v. Thatcher,* 2 T. R. [Eng.], 81. In each of the foregoing cases the term was used, and precisely in this sense, and these cases cover most of the states which, under different statutes, have adopted the directory theory, implying clearly that the use of this particular term in the statutes of those states would have compelled a different result and one in accordance with our conclusion and with the weight of authority elsewhere.    We therefore think that whether the result be reached by a review of the authorities or by an inspection of the statute itself, our legislature has declared in unmistakable terms that where an official bond is required it must be filed within the time provided by law, and that its filing within time is a condition precedent to the induction into office of the person elected; that Lansing did not present his bond within time; that he failed thereby to perform a condition precedent, and that he thereby lost all right to claim the office

38

unless his right was saved by a constitutional question, which next arises for consideration.

The constitution (article 3, section 20) provides: "All offices created by this constitution shall become vacant by the death of the incumbent, by removal from the state, resignation, conviction of a felony, impeachment, or becoming of unsound mind." It is contended that the expression of these events as creating vacancies is the exclusion of all others, and there are a few decisions in other states lending color to the argument. It would be a sufficient answer to this contention to say that this court has always carried in view the principle that the state constitution is not to be considered as a grant of power, but that its provisions are purely restrictive and that legislation is valid unless prohibited by the state or the federal constitution. Therefore, in such cases as the present, the maxim "*Expressio unius est exclusio alterius*," is not applicable, and the legislature may adopt any provision not prohibited by the constitution. (*State v. Lancaster County*, 4 Neb., 537; *State v. Dodge County*, 8 Neb., 124; *State v. Bean*, 16 Neb., 681; *Shaw v. State*, 17 Neb., 334.) To put it differently, the constitutional provision quoted creates a vacancy upon the happening of any of the events covered by the provision, and the legislature would be prohibited by that provision from enacting any law whereby such an event would not create a vacancy. But it is not prohibited from enacting that vacancies shall be otherwise created. But aside from this, section 20, article 3, of the constitution manifestly refers to events occurring after an induction into office. The case presented is not one of that character. It is not the case of ousting one already legally inducted into office for events occurring after his induction, but, on the contrary, it is questioning the right of one to claim an office in the beginning. The distinction has already been alluded to, but throughout it should be borne in mind that we are here discussing the right of a person to claim a term of

office, and not the right of another or of the public to oust one from a term already legally begun.

The next question which arises is as to the right of the relator himself to claim the office.  Section 21, article 6, of the constitution, provides: "In case the office of any judge of the supreme court, or of any district court, shall become vacant before the expiration of the regular term for which he was elected, the vacancy shall be filled by appointment by the governor, until a successor shall be elected and qualified, and such successor shall be elected for the unexpired term at the first general election that occurs more than thirty days after the vacancy shall have happened.  Vacancies in all other elective offices provided for in this article [which includes the office of county judge] shall be filled by election, but when the unexpired term does not exceed one year, the vacancy may be filled by appointment, in such manner as the legislature may provide."  Therefore, in case of vacancy in the office of the county judge, the constitution does not provide for filling the vacancy, but the general provision applies, that it shall be by election; provided, however, that where the unexpired term does not exceed one year the vacancy may be filled by appointment as the legislature may provide.  The legislature has provided as follows: "Vacancies shall be filled in the following manner: In the office of the reporter of the supreme court, by the supreme court; in all other state and judicial district offices,  *  *  *  by the governor.  *  *  *  In county and precinct offices, by the county board."  (Compiled Statutes, sec. 103, ch. 26.)  "Appointments under the provisions of this chapter shall be in writing and continue until the next election at which the vacancy can be filled, and until a successor is elected and qualified."  (Sec. 105.) "Vacancies occurring in the office of county judge  *  *  *  shall be filled by appointment as provided in section one hundred and three."  (Sec. 107.)  Here the unexpired term did exceed one year and, therefore, was to be filled by elec-

tion.  Whether it would have been proper, under existing
laws, to have filled the vacancy by appointment until the
election is not a question involved in this case, and is one
which we do not consider, because, conceding that a va-
cancy existed which should have been filled by appointment
provisionally, the failure of the proper officers to make the
appointment would render it none the less necessary to fill
the office by election at the succeeding general election.
There is, so far as we can find, no provision for a special
election in such case, and if there were one, the failure of
the proper officers to call such special election would not
deprive the electors at the next general election of the right
or of the duty of filling the office.

This brings us to the final question—the validity of the
election in so far as it may be affected by the fact that the
office of county judge was not one included in the notice of
election for 1894.  In *State v. Skirving*, 19 Neb., 497,
which, by the way, is also in point on the principal ques-
tion presented, it was said that the exercise of the right to
fill such a vacancy did not depend on the notice or want of
one.  That it was generally understood by the electors of
the county that a vacancy existed and they sought to fill
said vacancy, nearly all having cast their ballot for one of
the candidates named.  It was therefore held that the elec-
tion was valid, but the court disclaimed any intention of
passing upon the question as to the validity of such an
election had but a small percentage of the voters partici-
pated therein.  In *State v. Thayer*, 31 Neb., 82, the court
allowed a writ of *mandamus* to compel the canvass of the
votes under similar circumstances.  The governor had not
included in his proclamation of the election the filling of
the office in question.  The court held that the provision
in regard to proclamation was one of convenience for the
purpose of calling attention to the contingency, but said:
"It is not believed that it touches the foundation of the
right and power of the people under the statute to fill such

vacancy at the general election designated by law," and added thereto the statement that "whether the people had executed their right doubtless may in some instances depend upon the fact of their having actual notice of the existence of a vacancy." In *State v. Van Camp*, 36 Neb., 91, *State v. Thayer, supra*, was approved. This case related to the regularity of a nomination under what is called the "Australian Ballot Law," it being claimed that the nomination was irregular because one county was not included in the call for the convention and was not represented. The court said it would not "so construe the law as to disfranchise the voters of that county for any such irregularity." Here the information alleges that it was generally known that the relator and one Wilson were candidates for the office of county judge to fill the vacancy and that together they received the votes of more than half the voters voting at the election. The case therefore falls within the rule in the foregoing decisions, and the election was valid, notwithstanding the fact that the filling of this office was not one of the objects included in the notice of election.

What has been said in this opinion relates to the case under consideration as presented by the record, and to the statutes brought under consideration. We do not wish to be understood as questioning the propriety of those decisions which hold provisions of the general character referred to directory rather than mandatory, where the language is ambiguous or fairly susceptible of that interpretation. We are, however, compelled, in order to avoid judicial legislation, to reach the conclusion already indicated in this case. Whether or not the law is wise is a question with which the court has nothing to do. The legislature has declared it, its constitutionality has not been questioned, and our sole office is to determine the legislative intent. The consequences are matters for legislative consideration and not for the consideration of the court.

REVERSED AND REMANDED.

NORVAL, C. J., and RAGAN, C., dissenting.

It is evident that the question whether Lansing's failure to execute, have approved, and filed his official bond by the first Thursday after the first Tuesday in January, 1894, created a vacancy in the office of county judge, must depend upon the construction of the following language found in section 15, chapter 10, Compiled Statutes: "His office shall thereupon *ipso facto* become vacant." What is the meaning of the expression "shall thereupon *ipso facto* become vacant"? We think a fair construction of this phrase is that "his office shall at that time, by reason of such neglect, become vacant." Is this section of the statute mandatory or directory merely?

In *State v. Matheney*, 7 Kan., 327, the statute under consideration provided: "The bond and oath of the county clerk must be filed with the treasurer of the county," etc. "Every county office shall become vacant upon the refusal or neglect of the officer to deposit his oath and bond of office within the time prescribed by law." Matheney was elected county clerk, executed his bond, and took the oath of office required by law, and within the time required by law, and entered upon the duties of his office, but neglected to deposit his oath and bond with the county treasurer within the time prescribed by the statute, and the court held that the failure of Matheney to deposit his bond and oath of office with the county treasurer of the county within the time required by law—twenty days after his term of office began—created a vacancy in the office. The court said: "There can be no mistake as to the meaning of these statutes. Whatever may be the rule, independent of the statute, the plain provision of the law is, that not only a refusal, but a neglect simply, to deposit the official oath and bond within the time prescribed vacates the office. We may not add to nor take from the law. It may seem a matter of trivial importance whether a bond and oath, executed and

taken, are filed within twenty or thirty days; but that is a matter for the legislature to consider. They have power to establish a rule. Having established it, our plain duty is to enforce it."

A statute of California provided: "An office becomes vacant on the happening of either of the following events before the expiration of the term:   *   *   His [the officer elect's] refusal or neglect to file his official oath or bond within the time prescribed." (Political Code of California, sec. 996.) Taylor was duly elected sheriff, but neglected to file his official oath or bond within the time prescribed by the statute and the supreme court of that state in *People v. Taylor*, 57 Cal., 620, held that the neglect to file the bond within the time prescribed created a vacancy in the office.

The charter of the city of Brooklyn, New York, provided that if an alderman of said city should be elected to and accept any other public office, " his office as said alderman shall immediately become vacant." One O'Reilly was an alderman in the city of Brooklyn, and while holding that office was elected to and accepted the office of congressman of the United States, and the court of appeals of New York, in *People v. Common Council of the City of Brooklyn*, 77 N. Y., 503, held that O'Reilly's acceptance of the office of congressman created a vacancy in the office of alderman. The court, in effect, held that the quoted statutes were mandatory.

There are other cases holding that such a statute as the one we have under consideration is mandatory; but we think, however, that the weight of authority is to the effect that all such statutes are directory.

A statute of New Jersey provided that sheriffs should renew their bonds in November annually; and "That if any sheriff   *   *   *   shall neglect, refuse, or be unable to give the bond with sureties as aforesaid   *   *   *   at the time or times herein limited, the office of such sheriff

shall immediately expire and be deemed and taken to be vacant." (Revision of New Jersey, p. 1099, sec. 10.) The statute further provided:. "All such acts and proceedings done [by a sheriff] under color of office [after having neglected or refused to renew his bond] shall be absolutely void." The supreme court of New Jersey, in *Clark v. Ennis,* 45 N. J. Law, 69, construing these statutes, said: "It is clear, I think, both upon reason and authority, that a statute declaring an office vacant for some act or omission of the incumbent after he enters upon his duties does not execute itself;" and held, in effect, that the statute was directory.

The charter of the city of Chicago provided that all city officers who were required to give bonds for faithful performance of official duties should "file their bonds with the city clerk within fifteen days after their election," etc. The charter further provided that when bonds should not be filed with the city clerk within fifteen days after the official canvassing of the votes, "the person so in default should be deemed to have refused said office, and the same should be filled by appointment as in other cases;" and in case a bond so filed should not be approved and a satisfactory bond should not be filed within fifteen days after such disapproval, the person so in default should "be deemed to have refused said office, and the same should be filled as above provided;" and further, the charter made it "the duty of the clerk to notify all persons elected to office of their election, and unless such persons should respectively qualify within fifteen days thereafter the office should become vacant." It was held in *City of Chicago v. Gage,* 95 Ill., 593, that these provisions, in respect to the time within which official bonds were required to be filed, were not mandatory, but merely directory. The municipal authorities were empowered, in their discretion, to declare a vacancy, or to waive the default as to the mere time of filing the bonds, and to accept and approve it when afterwards

filed.    The mere default in that regard would not, of itself, operate to vacate the office.    The court said : "The position is, that the provision requiring a bond to be filed by the treasurer elect within fifteen days after the official canvass has been declared is mandatory, and that a failure to file the bond within the time *eo instanti*, upon the termination of the time, absolutely vacates the office.    It is insisted, on the contrary, that the sections of the charter on this subject taken together were intended merely to empower the mayor and council, in their discretion, to declare a vacancy and appoint a successor, or to waive the default as to the mere time of filing bond, and to accept and approve it when afterwards filed; therefore a failure to file in time does not of itself annul or avoid the right or title to the office, but merely renders it voidable or defeasible. That if the officer files his bond strictly in time, his right and title to the office are indefeasible.    If he files it afterwards, and it be accepted and approved, his right and title thereupon become equally indefeasible.    This latter seems a reasonable construction, and is one which we are disposed to adopt.    Gage derived his title to the office from election.    The law does not favor forfeitures, and 'in enforcing forfeitures courts should never search for that construction of language which must produce a forfeiture, when it will bear another reasonable construction.'"

A statute of Washington provided : "Every office shall become vacant upon the happening of either of the following events:    *    *    *    His [the officer elect's] refusal or neglect to take his oath of office within the time prescribed by law."    The supreme court of that state in *State v. Ruff*, 29 Pac. Rep., 999, construing this statute, held that the failure of the officer to take his oath of office within the time prescribed by law did not work a forfeiture of his right to the office, but simply authorized the proper authorities to declare the office vacant, and fill it by appointment. (See, also, *State v. Justices of the County Court*, 41 Mo., 44; *State v.*

*County Court of Texas County,* 44 Mo., 230 ; *Foot v. Stiles,* 57 N. Y., 399.)

A statute of Indiana provided: "County school superintendents, within thirty days from the issuing of the proclamation by the governor aunouncing the making of a contract for furnishing school books, and every county superintendent hereafter elected before he enters upon his official duties, shall enter into a special bond, and upon the failure of any county school superintendent to give such bond his office shall become immediately vacant." A county school superintendent elected after the passage of the act gave a general bond and entered upon his duties, but failed to give a special bond within thirty days after his election. In *Commissioners of Knox County v. Johnson,* 24 N. E. Rep. [Ind.], 148, the supreme court of that state, construing this act, said: "But it by no means results from the construction we have given the statute that the appellee lost his title to the office to which he was elected and into which he had been legally inducted. It is held by our own and other courts that statutes requiring official bonds to be filed within a designated time are directory and not mandatory. Upon this question the authorities are harmonious." The court then cited a number of authorities and continued: "This rule is carried very far, for it is held, without substantial diversity of opinion, that unless the statute makes the filing of a bond within a limited time a condition precedent to the right to the office, a failure to file it within the time prescribed will not work a forfeiture of the right to the office nor create a vacancy."

A statute of Louisiana provided that for the failure or refusal of a bank to pay specie for the period of ninety days its charter should become *ipso facto* forfeited. In construing this statute the supreme court of that state, in *Atchafalaya Bank v. Dawson,* 13 La., 497, said: "It would certainly be difficult to find in our language stronger terms, or to combine them with more force, for the purpose

of expressing the consequences of an act.   *   *   *   It is provided   *   *   *   that on the suspension or refusal of payment in specie for more than ninety days, the charter shall be *ipso facto* forfeited and void.   *   *   *   I do not understand the words '*ipso facto*' as having any other import than the corresponding term 'by the effect of the act,' made use of in the Code."

Respondent's case falls within the principle of these last cited cases, and controlled by the weight of authority we reach the conclusion that said section 15 is directory, and not mandatory, in so far as its provisions are under consideration here; that the section is not self-executing; that the execution and filing of an official bond by respondent for his second term of office was not a condition precedent to his right to enter upon and to discharge the duties of his office for the second term; that since respondent was already in office as county judge, was re-elected to succeed himself, and since he held under his first election and qualification until his successor should be elected and qualified (Compiled Statutes, sec. 104, ch. 26), he held office under his second election by a defeasible title from the time of his neglect to execute and file his official bond; that is, he held the office by a title capable of being divested at any time by the proper legal authorities; and that the execution and filing of his official bond by respondent, coupled with the neglect and failure of the proper authorities to declare the office vacant or to take any steps to that end prior to the time that respondent did execute and file his bond, saved the forfeiture incurred, and barred and precluded a subsequent judgment that the office was vacant by reason of respondent's default.