DAVID T. DAVIES, JR., AUD. V. STATE EX REL. SCHERER.

WILLIAM H. SCHERER V. ARTHUR H. RINE ET AL.

1. EFFECT OF FAILURE OF MUNICIPAL ASSESSOR TO QUALIFY.

Failure of an assessor in a municipality to qualify within the period after election prescribed by law, is deemed a refusal to accept the office, which becomes *ipso facto* vacant, to be filled by appointment by the county auditor.

2. MANDAMUS DOES NOT LIE TO INVEST DE FACTO ASSESSOR WITH LEGAL TITLE.

A writ of mandamus will not lie at the instance of a mere *de facto* assessor; to enforce his claims to be invested with evidences of a legal title to the office.

3. INJUNCTION IS PROPER REMEDY TO PREVENT DISTURBANCE OF OFFICE.

Injunction is the proper remedy by a *de facto* officer to prevent his being disturbed in the performance of the duties of the office until the legal title thereto has been determined.

4. TWO DE FACTO OFFICERS FOR ONE OFFICE HELD IMPOSSIBLE.

Two persons cannot, at the same time, be *de facto* officers of an office for which one incumbent only is provided by law.

5. DEPUTY COUNTY AUDITOR CANNOT APPROVE BONDS OR APPOINT ASSISTANT ASSESSORS.

Approval of official bonds of assessors and of the appointment of assistant assessors are acts not merely ministerial, but require the exercise of judgment and are not within the legal powers of a deputy county auditor.

[Syllabus by the court.]

MANDAMUS.   APPEAL (Two cases.)

L. W. Morgan and H. B. Thompson, for Davies and Arthur H. Rine.

L. W. Wachenheimer, B. W. Johnson and K. A. Flickinger, for Scherer.

## WILDMAN, J.

The two cases, *David T. Davies, Jr.* v. *State ex rel. William H. Scherer*, and the case of *William H. Scherer* v. *Arthur H. Rine* will be disposed of in one opinion.   The case of David T. Davies, Jr., as auditor of the county, against the State on relation of Scherer is an error proceeding brought in this court to reverse the judgment of the court below rendered in an application on behalf of Scherer as relator, for a writ of mandamus to compel Davies as county auditor to approve the appointment of two persons named by Scherer as assistant assessors,.

and to deliver to Scherer books and papers pertaining to the office of assessor; Mr. Scherer, claiming that he is the assessor of one of the wards or precincts of the city by virtue of his election thereto. The other case of Scherer against Rine was instituted in the court below but brought to this court by appeal, and is a suit for an injunction to restrain Rine from disturbing Scherer, in the performance of the duties of the office as assessor.

We are brought first to a consideration of the question whether or not Scherer, at the time of the institution of these suits, was entitled to claim the office of assessor. He had been duly elected thereto on November 5, 1907, and he attempted to qualify by filing a bond on the nineteenth day of the same month. The statute, Sec. 1518 (Lan. 2995), provides that upon the election of an assessor in any ward or precinct of a municipal corporation, the office shall be considered vacant, in the event of the failure of the person elected to give bond and take the oath of office for one week after his election. By Lan. Rev. Stat. 3025 (B. 1536-3), it is provided:

"When the corporate limits of a city or village become identical with those of a township, all township offices shall be abolished, and the duties thereof shall thereafter be performed by the corresponding officers of the city or village, excepting that justices of the peace and constables shall continue to exercise their functions," etc.

By Rev. Stat. 1739 (Lan. 3251; B. 1536-998), it is provided that certain official bonds in municipalities, including, as we construe the statutes, the bond of the assessor, "shall, upon its approval, be delivered to the city clerk," who shall file and preserve the same after record. By Rev. Stat. 1738 (Lan. 3249; B. 1536-997), it is provided that such bond shall be approved by the mayor. Revised Statutes 1718 (B. 1517-1) provides that in municipal corporations divided into wards, an assessor shall be elected in each ward at every annual election. He shall take the same oath, give the same bond and perform the same duties as are provided for township assessors. The section immediately preceding 1517 (Lan. 2994) provides as to the character of the bond to be given by the township assessor, so that the two sections must be read together to determine the duties of the municipal assessor. Revised Statutes 1517 and 1518 (Lan. 2994, 2995), to which I have already referred, are carried into the municipal code, and the code has provided for the amount of the bond to be given.

On April 8, 1907, of the year after Scherer's election, an official oath was taken by him, and on the thirteenth the city council undertook to pass a resolution approving his bond, and the mayor undertook

Davies v. State.

to approve the act of the council, the bond having been fixed at $1,000. There was never any approval of Scherer's bond by the mayor. He did nothing, so far as the record discloses to us, but approve the resolution of the council.

By Rev. Stat. 1740 (Lan. 3252; B. 1536-999), it is provided that,

"The council may declare vacant the office of any person elected or appointed to an office who shall fail to take the oaths required in section 1737 [Lan. 3248; B. 1536-996], or to give any bond required of him, within ten days after he has been notified of his appointment, or election, or obligation to give a new or additional bond, as the case may be."

This seems to have application to bonds generally, but by the section to which reference has already been made, Rev. Stat. 1518 (Lan. 2995), specific provision is made with reference to assessors, and it is provided, in effect, that as to this office, perhaps because of the need of filling it speedily after the election, the office of assessor shall be considered vacant, without waiting for the council to declare it so. The legislature probably made this enactment in view of the conditions existing, of a legislative character, as to the time of election, when the enactment was made; but they have permitted Rev. Stat. 1518 (Lan. 2995) to remain in force notwithstanding the subsequent changes as to the time of holding municipal elections.

A deputy auditor, Mr. Otto Sanzenbacher, attempted to approve the bond of Scherer, but we are quite clear in our view that the approval of an official bond is an act requiring such judgment of the officer attempting to exercise such approval that it cannot be done by a merely ministerial officer, and we do not think that a deputy auditor is clothed with the power attempted here to be exercised. The same thing is true as to the appointment of assistants. It is an authority given to the assessor. The assessor names the assistants, and the appointment is to be exercised or approved by the auditor, and it is a power which he could not delegate to another.

Now, coming directly to the question based upon the legislative enactments to which I have referred, and the view which I have expressed as that of the court, whether or not Mr. Scherer, at the time of the institution of these proceedings, was the legally appointed and qualified assessor, or, in other words, whether he was the *de jure* officer, I desire to cite certain authorities which seem to me decisive of the question. I have before me the case of the *State* v. *Matheny,* 7 Kan. 327, in which it is held that the failure of a county clerk-elect to

file his official oath and bond with the county treasurer within twenty days after the commencement of the term for which he was elected, vacates his office. In *State* v. *Lansing*, 64 N. W. Rep. 1104 [46 Neb. 514], decided in 1905, it was held:

"3. Section 716, providing that if any person elected or appointed to any office shall neglect to have his official bond executed and approved as provided by law, and filed for record within the time limited by this act, his office shall thereupon *ipso facto* become vacant, construed, and *held* to create a condition precedent to the right of a person so elected or appointed to be inducted into office."

This is the decision of the court, although two of its judges dissent. The fourth paragraph of the syllabus is:

"4. *Held*, further, that such provision is self-executing, and that unless the official bond, where one is required, is filed within the time provided by law, the person elected loses all right to the office, and the vacancy can be filled without any previous judicial determination of the fact."

The case is interesting because of the conclusion arrived at by the court, and also the comment in the opinion upon other cases, which are collated on page 1109. Numerous cases are cited, and the judge speaking for the court, says:

"It will thus be seen that the overwhelming weight of authority under statutes much less mandatory than our own is to the effect that, where a time is prescribed within which one in order to be inducted into an office must take the oath or, file a bond, the taking of the oath or the filing of the bond is a condition precedent to the right to enter upon the office, and that the right is absolutely lost by a failure to perform the condition within the time limited."

We have a general provision in our statutes, which has found analogies in the phraseology of those of some other states. Revised Statutes 19 (Lan. 24) reads as follows:

"Any person, elected, or appointed to an office of, whom bond or security is by law required previous to the performance of the duties imposed upon him by his office, who refuses or neglects to give such bond or find such security, agreeably to, and within the time for that purpose prescribed by law, and in all respects, to qualify himself for the performance of such duties, shall be deemed to have refused to accept the office to which he was elected or appointed, and the same shall be considered vacant, and be filled as provided by law."

This section also should be read in connection with Rev. Stat. 1518 (Lan. 2995), referring specifically to the office of assessor. In

Davies v. State.

Rev. Stat. 19 (Lan. 24), we have the provision as to the inference which is to be drawn from the refusal or neglect of the assessor to qualify. He "*shall be deemed to have refused*" the office; and in Rev. Stat. 1518 (Lan. 2995), we have the provision specifically provided as to the assessor's office, that if he fail to take the oath of office for one week after his election, "*the office shall be considered vacant.*" Taking the two sections together, there seems to be no escape from the conclusion that the failure to file his bond and take the oath of office within the time and in the manner provided by law, raises the presumption that he has declined the office, and also that it has become vacant. The statute says "it shall be considered vacant," and the other provision that, under certain circumstances and as to certain municipal officers, the council may declare offices vacant, has no necessary application to the circumstances of the present case. The vacancy is not dependent on such declaration by the council.

The supreme court of the state of Arkansas, *Falconer* v. *Shores*, 37 Ark. 386, has decided that the sheriff is by law *ex officio* collector of revenue, but if he fails to give bond as such collector by the time prescribed by the statute, the first Monday in January, he forfeits the office, and cannot be restored to it by executing the bond afterwards. I cite this case because of the attempt made by Scherer, after the expiration of the time allowed by law for his qualifying, to take the oath of office and file the approval of the deputy auditor.

After the office has become vacant, and after the conclusive presumption has been raised of his intention to decline the office, it would seem that there is no power in Mr. Scherer to restore himself to the office by any subsequent acts.

The case of *Kelly* v. *State*, 25 Ohio St. 567, does not affect the law governing the present case. In that case a question of estoppel was raised as against the sureties upon the bond of a county treasurer who had not qualified within the time required by the law, and it was held that as against such sureties the principle of estoppel would arise. The officer attempted to qualify after the expiration of the time provided by statute, and then proceeded to perform the duties of the officer; and the public, treating him as an officer *de facto*, and transacting business with him, acquired rights by virtue of the equitable principle of estoppel. But no such principle or question has been raised in the present case. On page 577 is some language which is probably *dictum*, but still should be given such force as we ordinarily give to expressions of that character by the judges of the Supreme Court, and it may be read: "The effect of the treasurer's failure to give bond, or take the oath

· Lucas County.

of office, on or before the first day of the term, involves a more serious
question."

Then the statute is quoted, which says that upon such failure the
office shall be held to be vacant, and makes it the duty 'of the com-
missioners to fill it by appointment; and Judge Welch says:

"I suppose the true construction of this statute to be, that upon
such failure to give bond and take the oath, the office *ipso facto* be-
comes vacant, without any resolution of the commissioners to that
effect, and without the appointment of anyone to the office, and that
the treasurer elect in such case is liable at any time thereafter to be
ousted from the office by a proceeding on the part of the public, or
of an appointee. It seems to us, however, that the treasurer and his
sureties are *estopped* from setting up this defense."

Here we have by this *dictum* a recognition of the principle which
seems decisive in the present case, where no question of estoppel has
been raised, where the public has not been injured, and is not seeking ·
to protect its rights as against a defective officer or the sureties upon
his bond. A *dictum* to similar effect appears in the opinion in *State*
v. *Hopkins*, 10 Ohio St. 511, *quid vide.*

A more decisive case is that of *State* v. *Commissioners*, 61 Ohio St.
560 [56 N. E. Rep. 473], holding:

"If one elected to the office of sheriff fails, without justification,
to give an official bond before the first Monday of January next after
his election, there occurs on that day a vacancy in the office which the
county commissioners should fill by appointment."

The court in that case, and the decision was *per curiam*, applied
the principles of Rev. Stat. 19 (Lan. 24), which I have read, and also
Rev. Stat. 1203 and 1205 (Lan. 2568, 2570), considering this general
section, Rev. Stat. 19 (Lan. 24), applicable to the case of the failure of
a sheriff to qualify, although there were specific provisions for his
qualification, just as in the present case we have specific provisions for
the qualification of an assessor, and as to the effect of his failure to
qualify within the time provided. Revised Statutes 1203 (Lan. 2568)
of the sheriff act provided that "The sheriff or coroner shall, within
ten days after receiving their commissions and before the first Monday
of January next after their election, give bond to the state, with two
or more sureties approved by the county commissioners;" and Rev.
Stat. 1205 (Lan. 2570) provided that "If the sheriff or coroner fails
to give bond, within the time above specified, or fails to give additional
sureties on his bond, or a new bond, within ten days after he has re-
ceived written notice that the county commissioners require such ad-

Davies v. State.

ditional sureties or new bond, then said commissioners' shall declare the office of such sheriff or coroner vacant; and said office shall thereupon be filled as provided by law." It will be noted that, although there was the provision quoted as to the declaring of the office vacant by the commissioners, the syllabus of the case holds that the office, on the very day when the bond should have been filed, became vacant.

Without considering for the time being the question whether the appointment of Rine by the auditor made him the *de jure* officer, it cannot be held that Scherer became a *de jure* officer merely by virtue of his election and his attempted qualification in the April after such election.

The question remains, and has seemed to us one of vital consequence in the case, whether a merely *de facto* officer can maintain a proceeding in mandamus to compel the recognition of any rights in him as an officer, and an examination of the authorities and a consideration of the principles involved lead our minds to the conclusion at which we have unanimously arrived, that a *de facto* officer does not possess the same rights as to maintenance of proceedings for mandamus that are held by an officer *de jure*.

The case of *Harris, Ex Parte*, 52 Ala. 87 [23 Am. Rep. 559], holds:

"Mandamus is not the proper remedy to try the right to a public office of which there is a *de facto* incumbent. Nor will it lie in any case to compel the performance of duty or exercise of power, unless the relator has a clear legal right to demand it, and is without any other adequate and specific remedy."

On the question as to the right of a mere *de facto* officer, to maintain mandamus, I invite attention to the definition of the expression "officer *de facto*" as found in Mechem, Pub. Off. (1890 ed.) Sec. 317. I will not stop to read, but in one of the paragraphs of the section it is said:

"Thus if the title of the assumed officer be directly assailed by the state, in a proper proceeding, it will be necessary for him to show himself something more than an officer in fact. So in a direct proceeding brought by the assumed officer himself to secure rights which belong only to an officer *de jure*, it may be necessary for him to show himself to be such."

Now is not that the present case? Here is a person who claims to be performing some of the functions of an officer, in other words, to be an assessor *de facto*. He says that he was to a certain extent recognized by the auditor at one time as an assessor; that he came into possession of some of the necessary blanks or papers, and that he inspected or viewed at one time certain structures, and that he

was elected by a vote of the people to the office. In order to fortify his position and sustain his claims to being a *de jure* officer, he seeks to get the indicia or evidences of his right to the office. But that is a kind of fortification of title which we think it is not the province of the proceeding in mandamus to bring to him. He must do it in a direct proceeding in the nature of quo warranto, or in some other way. He must bring the title to his office directly into issue.

Section 322 of this same work has this language: "It is evident that two different persons cannot, at the same time, be in the actual occupation and exercise of an office for which one incumbent only is provided by law. There cannot, therefore, be an officer *de jure* and another officer *de facto* in possession of the same office at the same time. Hence if the officer *de jure* is in, there is no room for an officer *de facto*, and if the officer *de facto* is in, the officer *de jure* [illegible]."

There are two cases from other states bearing directly upon this question. One is that of *People v. Weber*, 86 Ill. 283, holding—I read the third, fourth and fifth paragraphs of the syllabus:

"Where one claims rights as an officer, by virtue of his office, he must show that he is legally entitled to act; that he is an officer *de jure* as well as *de facto*.

"The acts of an officer *de jure* are valid and effectual everywhere when within the limits of his authority; but the acts of a *de facto* officer are valid only so far as the rights of the public and of third persons having an interest in such acts are involved; but such officer can claim nothing for himself.

"The title of a *de facto* officer cannot be inquired into in a collateral way between third parties; but it may be inquired into whenever he is suing in his own right as an officer."

He is suing here. He is claiming that he is an officer; he is insisting that he is entitled to the paraphernalia or insignia or indicia of his office; that he must have the tools, the furniture, that he must have everything that pertains to the office which he claims to hold; in other words, the title to the office is drawn directly in question in the first instance, and it is not enough for him to say: "I insist upon being clothed with all the rights and powers appertaining to the office, because I am exercising some of the powers appertaining to that office."

The supreme court of Indiana has made a like holding in *Glascock v. Lyons*, 20 Ind. 1 [83 Am. Dec. 299]:

"If a person rightfully in the possession of an office to which he

Davies v. State.

is entitled, is ousted therefrom by an intruder, an action for money had and received would lie in his favor against the usurper to recover the fees, when fixed or customary fees are incident to the office. And in such an action the title to the office may be determined. A person who is rightfully entitled to an office, although not in the actual possession of it, has a property in it and against a mere intruder, who may perform the duties of their office for a time and receive the fees arising therefrom, he may maintain an action for money had and received to recover such fees, and such an intruder cannot maintain any part thereof as compensation for his labor." It is because,

We are too prone to forget, in our construction of cases affecting the incumbencies of offices, that an office is not a mere institution like an almshouse or an orphans' asylum, provided for the benefit of the incumbent, but it is a place of service, established for the benefit of the public, and the statutes are to be construed and enforced in the light of that fact.

We hold upon the views already expressed; first, that Mr. Scherer has not shown himself to be a *de jure* assessor, and second, that the proceeding in mandamus will not lie in favor of one who is not such, that the writ should be refused. Our judgment is strengthened somewhat by the fact that the auditor himself has recognized, and is recognizing, another person as the *de jure* assessor, has approved the appointments of assistants for such assessor, and has given him the books and papers pertaining to the office, bringing the case very much on a parallel with that suggested by Mechem, Pub! Off. Sec. 322, *supra*, where it is said that there cannot be two officers, one *de facto* and one *de jure*, at the same time, when the *de jure* officer is in possession. It would seem that at the beginning of these proceedings, no matter what had happened before, Scherer was no more *de facto* officer than Rine, that is to say, he was no more acting than Rine, he was no more in possession of the apparent evidences of an incumbency than was Rine, and for that reason, in addition to those already suggested, it would seem as if mandamus was not a proper proceeding to determine which of the two men was entitled to office. Again, his proceeding is not against Rine, it is instituted against the county auditor, and no rights of Rine can be determined in the mandamus proceeding against the auditor.

Coming to the injunction suit which was brought by Scherer, claiming to be at least an officer *de facto*, and asking that he be not disturbed in the exercise of the duties of his office, it may be repeated that such application must be made because of the danger to the public, rather than because of any deprivation of benefit to himself. It is because,

Lucas County.

if he is disturbed in the performance of his duties while he is the one *de facto* officer, the public will be injured. When the case was first presented to us, and upon the showing then made and citation of authorities, and such examination as we were able to give to them, we concluded that, while the testimony was somewhat meager and vague in support of the claim of Scherer that he was a *de facto* officer, still there was enough to justify his claim, and we were disposed to grant the injunction. But much light has been given to us in the rediscussion of the case in connection with the presentation of the mandamus proceeding. It is not that new evidence has been offered, but we have had time to give to the whole matter more careful consideration, and it has been brought more clearly to our minds that no interest of the public can be subserved by preventing Rine from going on and performing the duties which are imposed upon him by the appointment. It is now made probable as between Scherer and Rine, who are both parties to the injunction suit, that Rine is the officer *de jure* as well as *de facto*. He was appointed, as the statute requires, by the auditor. He was appointed after the office had become vacant by reason of the failure of Scherer to qualify; and Rine was not appointed by a deputy, but by the auditor, as the statute requires. He has filed his bond with the auditor pursuant to a like requirement; he has, so far as appears, qualified regularly, and under those circumstances we are not now disposed to prevent him from performing the duties of the office, and thereby increasing the entanglement between these two gentlemen who are both claiming to be assessors.

We have arrived at the unanimous conclusion, not only that the writ of mandamus should be refused, as already stated, but that we should not grant the injunction asked by Scherer. The contrary view previously announced in the injunction suit has not been embodied in any entry on the docket of the court or the journal, and for this reason it is not necessary to put the present decision in the form of setting aside a judgment. We have simply reconsidered the case, and the judgment of the court will be as an original one. The injunction will be refused and the petition of the plaintiff dismissed. On the cross petition of Rine, which asks an injunction against Scherer of like character, we have concluded that the facts warrant us in granting it and the judgment will be entered accordingly.